**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION**

| | | |
|---|---|---|
| HEADWATER RESEARCH LLC, | § | |
| | § | |
| *Plaintiff*, | § | Case Nos. |
| | § |   7:25-cv-00372-DC-DTG |
| v. | § |   7:25-cv-00374-DC-DTG |
| | § |   7:25-cv-00380-DC-DTG |
| GOOGLE LLC, | § |   7:25-cv-00518-DC-DTG |
| | § | |
| *Defendant*. | § | JURY TRIAL DEMANDED |
| | § | |
| | § | |

**GOOGLE'S REPLY CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.   ARGUMENT .............................................................................................................. 1

     A.   "traffic shaping" ('364 Patent, Claims 7, 11, 14, 16, 19, 20, 27) .................................. 1

         1.   The Court should construe "traffic shaping" because Google and Headwater dispute the scope of the term. ................................................................................ 1

         2.   The intrinsic evidence supports Google's proposed construction, not Headwater's. ............................................................................................................. 1

         3.   Google's proposed construction does not add new limitations to any claim. .......... 3

     B.   "A wireless end-user device" ('976 Patent, Claim 1) ...................................................... 3

     C.   "one or more processors configured to" ('445 Patent, Claim 1) / "the one or more processors" ('445 Patent, Claims 1, 2, 6-12, 14, 16, 17, 19, 22, 25) ............................... 5

         1.   Headwater, not Google, asks the Court to read in unsupported claim language, and Google has not waived any part of its construction. ................................................. 6

         2.   The existence of similar, unconstrued claim terms does not contradict Google's construction. ........................................................................................................... 7

         3.   Google's construction is consistent with multiple processors or devices being present, and the same claim construction principles apply. .................................... 8

         4.   Google's cited authority is applicable here. .......................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
  512 F.3d 1338 (Fed. Cir. 2008)..................................................................................................6

*Carrum Techs., LLC v. Ford Motor Co.*,
  No. 2024-1183, 2025 WL 2924504 (Fed. Cir. Oct. 15, 2025)....................................................6

*Convolve, Inc. v. Compaq Comput. Corp.*,
  812 F.3d 1313 (Fed. Cir. 2016)..................................................................................................5

*Finjan LLC v. SonicWall, Inc.*,
  84 F.4th 963 (Fed. Cir. 2023) ....................................................................................... *passim*

*Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*,
  381 F.3d 1111 (Fed. Cir. 2004)..................................................................................................*8*

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
  521 F.3d 1351 (Fed. Cir. 2008)..................................................................................................1

*Salazar v. AT&T Mobility LLC*,
  64 F.4th 1311 (Fed. Cir. 2023) ..................................................................................... *passim*

## I.      INTRODUCTION

Google's proposed constructions resolve ambiguities and disputes between the parties. Headwater's constructions ignore these issues. The Court should adopt Google's constructions.

## II.     ARGUMENT

### A.      "traffic shaping" ('364 Patent, Claims 7, 11, 14, 16, 19, 20, 27)

| Headwater's Proposed Construction | Google's Proposed Construction |
|---|---|
| No construction is necessary; each term's plain and ordinary meaning should apply. | "control or regulation of a pre-existing flow or throughput of data." |

#### 1.      The Court should construe "traffic shaping" because Google and Headwater dispute the scope of the term.

As an initial matter, the Court should construe "traffic shaping" because there is a dispute as to the proper scope of the term and, thus, construction is appropriate. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360–61 (Fed. Cir. 2008) ("'[P]lain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute."). Headwater does not agree with the inclusion of "pre-existing" in Google's proposed construction. As shown in Google's Opening Brief, Google's construction is consistent with the term's plain and ordinary meaning in the context of the claims in which it is used, and the specification. Dkt. 61[1] at 3–5.

#### 2.      The intrinsic evidence supports Google's proposed construction, not Headwater's.

As Google showed in its Opening Brief, its proposed construction is consistent with the term's plain and ordinary meaning in the context of the '364 Patent claims and is supported by the specification as well. Dkt. 61 at 3–5. Headwater claims that the specification contradicts Google's proposed construction, arguing that because traffic shaping can occur in the future, there need not

---

[1] Docket citations refer to the -372 Case docket unless otherwise noted.

be a pre-existing flow or throughput of data. Dkt. 66 at 2–3. However, even if traffic shaping occurs at some future point in time, there still must be a pre-existing flow or throughput of data at the time the traffic shaping takes place. Otherwise, as Google argued in its Opening Brief, there is nothing to apply "traffic shaping" to, nor is there anything to control or regulate. Dkt. 61 at 2–5. Headwater fails to rebut this argument or otherwise explain how there is anything to apply "traffic shaping" to if there is not a pre-existing flow or throughput of data.

Google addressed the first two excerpts of the '364 Patent specification to which Headwater points in its Opening Brief. *See* Dkt. 61 at 4–5; Dkt. 66 at 2–3. In both of these examples of a traffic shaping algorithm, *see* -374 Case, Dkt. 28-1 ('364 Patent) at 48:43–56, traffic shaping is applied to pre-existing flows or throughputs of data because without a pre-existing data flow or throughput, there is nothing to control or regulate. There is no mention of "future data flows" in these excerpts as Headwater suggests. *See id*; Dkt. 66 at 2–3. Headwater's proposed construction would add new language to the specification that is simply not there.

As for the third excerpt of the '364 Patent specification cited by Headwater, '364 Patent at 96:17–40, this portion of the specification discusses throttling traffic and does not use the term "traffic shaping." This portion of the specification is irrelevant because traffic shaping and throttling are treated as separate terms in the claim language. *See, e.g.*, '364 Patent, Claim 27 ("comprises throttling *or* traffic shaping the first service activity.") (emphasis added). In any case, that a user can pre-select which application will be subject to throttling, or traffic shaping, in the future does not negate the fact that there will be a pre-existing flow or throughput of data when that throttling, or traffic shaping, is applied. There must be a pre-existing flow or throughput of data to apply traffic shaping, regardless of *when* traffic shaping is applied. Otherwise, as Google previously argued, there is nothing to control or regulate.

### 3. Google's proposed construction does not add new limitations to any claim.

Google relied on the language of Claims 7, 11, and 27 to show that "traffic shaping" consists of "control or regulation of a pre-existing flow or throughput of data." Dkt. 61 at 3. Rather than address Google's arguments, Headwater incorrectly asserts that Google is adding limitations to Claim 7, but Headwater refers to Google's discussion of *Claim 11*. Dkt. 66 at 3–4. Google recognized these two claims contain different language and addressed them separately, rendering Headwater's arguments regarding claim differentiation inapplicable. *See* Dkt. 61 at 3–4. This Court should ignore Headwater's attempt to confuse the two arguments.

As Google showed in its Opening Brief, Claim 7 recites "reducing data usage." '364 Patent, Claim 7. There must be a pre-existing flow or throughput of data that is reduced through the application of traffic shaping. *See* Dkt. 61 at 4. This argument is true irrespective of Google's arguments regarding Claim 11. Contrary to Headwater's arguments, Google's proposed construction of "traffic shaping" does not add new limitations to any claims of the '364 Patent.

### B. "A wireless end-user device" ('976 Patent, Claim 1)

| Headwater's Proposed Construction | Google's Proposed Construction |
| --- | --- |
| No construction is necessary; each term's plain and ordinary meaning should apply. | Limiting preamble. The same wireless end-user device must include each of the elements recited in the body of the claim. |

Headwater concedes the preamble is limiting but argues that no construction is necessary and that Google's proposed construction would cause confusion. Dkt. 66 at 4–6. Not so. Google's proposed construction resolves ambiguity by clarifying that the same wireless end-user device identified in the preamble must include each element recited in the claim body. Without that clarification, Headwater could advance, and the jury could adopt, a disaggregated infringement

theory that improperly distributes claim elements across device and network-side infrastructure. It would make little sense for one wireless end-user device to include the claimed device display while a different device or network element performs the claimed background/foreground classification of applications based on interaction with that display. Google's construction avoids such a result and maintains the device-centric structure described throughout the specification, as discussed in Google's Opening Brief. Dkt. 61 at 6–7. Headwater's response does not identify any defect in Google's proposed construction.

First, Headwater's attempt to characterize Google's concern as a "misunderstanding" underscores why construction is necessary. Headwater asserts its contentions accuse only devices "that utilize" cellular networks, servers, and services. Dkt. 66 at 5. But immediately following that statement, its infringement contentions state "including, without limitation:" and then provide purported examples of such devices, in one paragraph identifying "[s]ervers, hardware, software, and services . . . including relating to Google's broadband and wireless network services functionality," and in another identifying "[c]ommunications devices, *routers*, phones, tablets, and wearables," followed by a list of exemplary Pixel devices. Dkt. 66-2 at 2. Moreover, in the -372, -374, and -518 Cases, Headwater's contentions refer only to phones, tablets, wearables, and/or laptops, without separately identifying cellular networks and network-side elements—even though the asserted claims similarly contemplate communicating with or utilizing such infrastructure. Exs. 1–3 at 2. Having chosen broader language in the -380 Case infringement contentions, Headwater cannot fault Google for seeking a construction clarifying that the elements in the body of the claim must reside in the same wireless end-user device.

Second, Headwater argues that Google's construction is ambiguous and could lead to the "nonsensical" result of requiring a WWAN to be physically included inside the end-user device.

Dkt. 66 at 6. Headwater mischaracterizes both the claim language and Google's construction. The claim does not recite a WWAN (without a "modem") as a component or element to be included within the device. Rather, the claim distinguishes between a "WWAN modem" and a "WWAN." The WWAN modem is recited as part of the device; the WWAN is recited only as the external network with which the WWAN modem communicates. -380 Case, Dkt. 26-1 at Claim 1.

Third, a "general instruction" on antecedent basis would not resolve this ambiguity as Headwater suggests. Dkt. 66 at 6–7. The question is not whether jurors understand the concept of antecedent basis or need an instruction on the concept at all, but whether the jury would understand that the preamble limits the scope of the claim such that its elements cannot be drawn from disparate systems. Antecedent basis does not determine the boundaries of what the claim covers. Headwater's arguments on these points should therefore be rejected.

C.      "one or more processors configured to" ('445 Patent, Claim 1) / "the one or more processors" ('445 Patent, Claims 1, 2, 6-12, 14, 16, 17, 19, 22, 25)

| Headwater's Proposed Construction | Google's Proposed Construction |
|---|---|
| No construction is necessary; each term's plain and ordinary meaning should apply. | These terms must have the same meaning in each instance that they appear in the claims. |

Google's proposed construction for these terms applies the rule that "the use of 'the' . . . indicates the claimed term refers to an antecedent term." *Finjan LLC v. SonicWall, Inc.*, 84 F.4th 963, 974 (Fed. Cir. 2023) (citation omitted). That is, where the term "the one or more processors" appears in the '445 Patent claims, it refers to the *same* "one or more processors," that satisfied the first limitation where the term is introduced in the claims. *Finjan*, 84 F.4th at 974–75; *Salazar v. AT&T Mobility LLC*, 64 F.4th 1311, 1317 (Fed. Cir. 2023); *Convolve, Inc. v. Compaq Comput. Corp.*, 812 F.3d 1313, 1321 (Fed. Cir. 2016); *Carrum Techs., LLC v. Ford Motor Co.*, No. 2024-1183, 2025 WL 2924504, at *4–6 (Fed. Cir. Oct. 15, 2025). This is a non-controversial rule of

claim construction, and Headwater *agrees* this is the rule. Dkt. 66 at 8.

> **1.    Headwater, not Google, asks the Court to read in unsupported claim language, and Google has not waived any part of its construction.**

Rather than address Google's argument, Headwater argues that Google "misframed" the disputed issue and, in turn, misconstrues Google's proposed construction. Specifically, Headwater claims that Google seeks to add the phrase "at least one of" before each recitation of "the one or more processors." Dkt. 66 at 8. This is a straw man argument that should be ignored.

Headwater takes issue with Google's position that for all of the limitations that recite "the one or more processors," at least one such processor must be capable of performing *all* those limitations, and also argues it is an additional construction that Google waived. Dkt. 66 at 8 & 18 n.4. But this is not a separate point from Google's construction; it reflects how established law dictates such terms are to be interpreted. Headwater in effect contests how the Federal Circuit interprets such claim terms. *Salazar*, 64 F.4th at 1318 (Fed. Cir. 2023) (declining to "read the phrase 'one or more' in the district court's claim construction to mean '*any one of the* one or more' when referring to the later-recited functions" and holding that "it does not suffice to have multiple microprocessors, each able to perform just one of the recited functions; the claim language requires at least one microprocessor capable of performing each of the recited functions."); *see also Carrum Techs.*, 2025 WL 2924504, at *6 ("[T]he plain language of the claims requires that at least one of the one or more controllers performs all of the controller's recited functions.").[2]

---

[2] Headwater further contests basic tenets of claim construction by arguing that "if the patentee intended to claim a single processor that would perform all the recited functions, it simply could have recited 'a processor' and 'the processor.'" Dkt. 67 at 6. The Federal Circuit "has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more.'" *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008) ("That 'a' or 'an' can mean 'one or more' is best described as a rule, rather than merely as a presumption or even a convention."). Thus, Headwater is wrong—the term "a processor," as a legal matter, is interpreted to be synonymous with the term "one or more processors."

However, should the Court agree with Headwater that the claims do not require that there be at least one processor among "the one or more processors" that is capable of performing all of the limitations reciting "the one or more processors," it is still the case that "subsequent references to 'the [one or more processors]' can only be satisfied by the *same* 'one or more [processors]' that satisfied the first limitation." *Finjan*, 84 F.4th at 974–75 (emphasis added). For example, if Headwater argued that the initial use of "one or more processors" is satisfied by a group of three processors, then those *same* three processors must each be involved in performing each of the later limitations that recite "the one or more processors." Under Headwater's interpretation, the claim could be satisfied if one of the three processors performed the first limitation requiring "one or more processors," without the involvement of the other two processors, but then one or both of the other processors performed every subsequent limitation requiring "*the* one or more processors," without the involvement of the first. The subsequent limitations would not be performed by the *same* "one or more processors" that performed the first limitation. This interpretation would allow for the illogical result that reciting "one or more processors" encompasses *every* processor in a system, and a plaintiff is free to pick and choose disparate processors to satisfy any subsequent limitations, even if the processors are uninvolved in performing the other limitations. Effectively, Headwater argues the Court should "read the phrase 'one or more' . . . to mean '*any one of the* one or more' when referring to the later-recited functions," which is a reading the Federal Circuit rejected in *Salazar*. 64 F.4th at 1318. Although Headwater accuses Google of inserting a limitation ("at least one of") before the limitations reciting "the one or more [processors]," it is Headwater that asks the Court to read in "any one of" before each such limitation. Dkt. 66 at 8, 10.

### 2.    The existence of similar, unconstrued claim terms does not contradict Google's construction.

Google's supposed failure to seek construction of similar terms using "the one or more"

language (*e.g.*, "the one or more network access conditions," "the one or more agents," etc.) does not undermine its proposed construction. *See* Dkt. 66 at 9–11. First, the terms Headwater calls out are different from those Google seeks to construe, and different terms are presumed to have different meanings. *Innova/Pure Water, Inc. v. Safari Water Filtration Systems, Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004). Second, Google does not bear the burden to seek construction of every potential, or similar, claim term and Headwater cites no authority for such a requirement. Third, even if they use similar language, that does not mean that the ways they are invoked as antecedent terms are subject to the same ambiguities. For example, "one or more network access conditions" essentially equates to the underlying information being communicated, whereas "one or more processors" are physical objects within a device.

Based on Google's current understanding of the claims, Google believes that their plain and ordinary meaning is sufficiently clear; therefore, no construction is necessary. Contrary to Headwater's apparent suggestion that Google is bound to construe them because they are similar to terms it does construe, Google is aware of no such rule and Headwater cites none.

### 3. Google's construction is consistent with multiple processors or devices being present, and the same claim construction principles apply.

Headwater is not correct that Google's construction contradicts its position that the purported "inventions of the Asserted Patents are or may be distributed over multiple processors or devices." Dkt. 66 at 11 (quoting Dkt. 61 at 10). The issue arises from how Headwater drafted its claims and its reference to antecedent terms. By using the word "the" preceding "one or more [processors]" in subsequent limitations, Headwater bound itself to the requirement that those limitations "can only be satisfied by the *same* 'one or more [processors]' that satisfied the first limitation." *Finjan*, 84 F.4th at 974–75 (emphasis added). In other words, the *same* "one or more processors" that satisfied the first limitation must satisfy each subsequent limitation. *Id.*; *Salazar*,

64 F.4th at 1318. Headwater's piecemeal approach to claim construction should be rejected.

Headwater's analysis of the intrinsic record does not support a different result. Instead, the disclosures Headwater cites stand for the undisputed proposition that the purported inventions may be distributed over multiple processors. That does not change how claim construction principles apply to Headwater's claims. For example, Headwater recites a disclosure stating "where more or less of the service processor functionality is moved onto the modem subsystem." '445 Patent at 61:27-31. This does not change the fact that claim language referencing "*the* one or more processors" must be satisfied by the *same* "one or more processors" that satisfied the first limitation. *Finjan*, 84 F.4th at 974–75. If Headwater wanted disparate processors to satisfy some limitations, but not others, it could have drafted the claims to do so. For example, the specification provides "[i]n some embodiments, QoS techniques as described herein are implemented in the device (e.g., using the service processor **115**) ***and one or more other network elements/functions***, such as the BTS **125**, service controller … can be distributed or allocated to such network elements/functions." '445 Patent at 49:45-55. Thus, Headwater could have drafted the subsequent limitations to refer to "other" processors or, as suggested in *Salazar*, it could have added "*any one of the* one or more processors." *Salazar*, 64 F.4th at 1318. It did not do so. Headwater nonetheless asks the Court to read that meaning into the claims. The Court should decline to do so. *Id.*

Headwater's citation to the '451 Patent similarly fails. Headwater recites a disclosure stating that "[i]n some embodiments, a device includes more than one processor and/or sub-processor, and in such a device, there can be a division of the functionality for one or more processors and/or sub-processors." Dkt. 66 at 14-15 (quoting '451 Patent at 27:6–10). There, the very next sentence in the specification demonstrates such a distinction: "***[O]ne or more processors and/or sub-processors*** can perform general operating system or application program execution

functions, while ***one or more others*** can perform communication modem functions, input/output functions, . . . .". '451 Patent at 27:10–18. Again, Headwater could have drafted the subsequent limitations to refer to "other" processors but chose not to.

Moreover, Google's construction is consistent with the specification disclosures that Headwater cites. Indeed, "there can be a division of the functionality for one or more processors and/or sub-processors," as stated in the specification, Dkt. 66 at 15 (quoting '451 Patent at 27:6–10), even where the term "*the* one or more processors" is construed to refer to the *same* "one or more processors" that satisfied the limitation that introduced the term. Thus, the portions of the specification Headwater cites do not *require* that the claims be read to allow for a particular function to be *entirely* performed by one processor while another is *entirely* performed by another processor. The claims do not allow for that possibility because the limitations reciting "*the* one or more processors" must be performed by the *same* "one or more processors" that satisfied the limitation that introduced the term. *Finjan*, 84 F.4th at 974–75; *Salazar*, 64 F.4th at 1318.

### 4.    Google's cited authority is applicable here.

Headwater claims that "Google's cited cases are inapposite" because "[m]ultiple key facts readily distinguish this case from those cited by Google." Dkt. 66 at 16. Beyond repeating its earlier arguments, Headwater adds only that "those cases followed a more typical 'a'/'the' recitation of the disputed limitations." Dkt. 66 at 16. In *Salazar*, the court applied the district court's construction of "a" to mean "one or more" and the patentee argued later references to the term "simply reinvokes th[e] non-singular meaning." *Salazar*, 64 F.4th at 1318. But the Federal Circuit rejected the patentee's argument because it required interpreting the term to mean "'*any one of the* one or more' when referring to the later-recited functions." *Id.* Headwater asks the Court to do the same thing, and the Court should likewise reject this request.

DATED:  June 4, 2026

Respectfully Submitted,

JACKSON WALKER LLP

PAUL HASTINGS LLP

Nathaniel St. Clair, II
Tex. Bar No. 24071564
nstclair@jw.com
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
Telephone:  (214) 953-6000
Facsimile:  (214) 953-5822

Paige V. Welch
Tex. Bar No. 24138184
pwelch@jw.com
100 Congress Ave., Ste 11000
Austin, TX 78701
Telephone: (512) 236-2295
Facsimile: (512) 236-2002

By: */s/ Robert W. Unikel*
Robert W. Unikel
Ill. Bar No. 6216974
robertunikel@paulhastings.com
71 South Wacker Drive, Suite 4500
Chicago, IL 60606
Telephone: (312) 499-6000
Facsimile: (312) 499-6100

Matthias A. Kamber
Cal. Bar No. 232147
matthiaskamber@paulhastings.com
101 California Street, 48th Floor
San Francisco, CA 94111
Telephone: (415) 856-7000
Facsimile: (415) 856-7100

Andrea P. Roberts
Cal. Bar No. 228128
andrearoberts@paulhastings.com
1117 S. California Avenue
Palo Alto, CA 94304
Telephone: (650) 320-1800
Facsimile: (650) 320-1900

Robert R. Laurenzi
N.Y. Bar No. 3024676
robertlaurenzi@paulhastings.com
200 Park Avenue
New York, NY 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090

Ariell N. Bratton
Cal. Bar No. 317587
ariellbratton@paulhastings.com
4655 Executive Drive, Suite 350
San Diego, CA 92121
Telephone: (858) 458-3000
Facsimile: (858) 458-3005

-11-

Stephanie Adamakos
D.C. Bar No. 1718981
stephanieadamakos@paulhastings.com
2050 M Street NW
Washington, D.C. 20036
Telephone: (202) 551-1700
Facsimile: (202) 551-1705

*Attorneys for Defendant*
*GOOGLE LLC*

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, the undersigned certifies that on June 4, 2026, all counsel of record who have appeared in this case and have consented to electronic service, were served with the foregoing document via the Court's CM/ECF system.

*/s/ Robert W. Unikel*
Robert W. Unikel

-12-