# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## MIDLAND/ODESSA DIVISION

|  |  |
|---|---|
| HEADWATER RESEARCH LLC,<br><br>        *Plaintiff*,<br><br>    v.<br><br>GOOGLE LLC,<br><br>        *Defendant*. | Case Nos.<br>7:25-CV-00372-DC-DTG[1]<br>7:25-CV-00374-DC-DTG<br>7:25-CV-00380-DC-DTG<br>7:25-CV-00518-DC-DTG |

## PLAINTIFF HEADWATER RESEARCH LLC'S
## <u>SUR-REPLY CLAIM CONSTRUCTION BRIEF</u>

---

[1] All docket citations are to 7:25-cv-00372 unless otherwise specified.

**TABLE OF CONTENTS**

I.      ARGUMENT ...................................................................................................................... 1

        A.      "traffic shaping" (Patent 8,666,364 claims 7, 11, 14, 16, 19, 20, 27) ...................... 1

                1.      *O2 Micro* does not preclude "plain and ordinary meaning" ........................ 1

                2.      Google's "pre-existing" construction does not reflect its
                        argument ....................................................................................................... 1

                3.      Google improperly attempts to narrow claim 7 using claim
                        11 .................................................................................................................... 1

                4.      The specification supports Headwater ........................................................... 2

        B.      "A wireless end-user device" (Patent 9,143,976 claim 1) ......................................... 3

                1.      The unopposed combination of "Limiting preamble" and
                        the general antecedent basis instruction solves everything .......................... 3

                2.      The Federal Circuit's antecedent basis instruction is better
                        than Google's new, ambiguous language ....................................................... 3

        C.      "[the] one or more processors [configured to]" (Patent 9,277,445
                claims 1, 2, 6–12, 14, 16, 17, 19, 22, 25) .................................................................. 4

                1.      The Court should use the undisputed general instruction ............................. 4

                2.      Google's arguments are misframed and waived. ......................................... 4

                3.      Headwater's proposal adds no new claim language ..................................... 5

                4.      Only Headwater's proposal is consistent with the
                        specification .................................................................................................. 5

                5.      Google continues to ignore "or more" ......................................................... 7

                6.      Google's suggested alternative claim language has a
                        different meaning ........................................................................................... 7

                7.      Google is driven by futile non-infringement motivations ............................ 8

                8.      Google's backup proposal is nonsense and contradicts the
                        patent ............................................................................................................. 8

                9.      Google's Reply continues to blindly apply caselaw .................................... 9

                10.     Google Misinterprets Baldwin ..................................................................... 10

                11.     Google cannot reconcile the parallel terms ................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
   512 F.3d 1338 (Fed. Cir. 2008) ........................................................................ 10

*BTL Indus. Inc. v. Rejuva Fresh LLC*,
   No. 1:23-CV-00032-SDN, 2025 WL 2452505 (D. Me. Aug. 26, 2025) .............................. 9, 10

*Carrum Techs., LLC v. Ford Motor Co.*,
   Nos. 2024-1183, 2024-1480, 2025 WL 2924504 (Fed. Cir. Oct. 15, 2025) .............................. 9

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*,
   438 F.3d 1374 (Fed. Cir. 2006) ........................................................................ 1

*Finjan LLC v. SonicWall, Inc.*,
   84 F.4th 963 (Fed. Cir. 2023) ........................................................................ 9

*Intel Corp. v. Qualcomm Inc.*,
   21 F.4th 801 (Fed. Cir. 2021) ........................................................................ 7

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008) ........................................................................ 1

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ................................................................... 6, 7, 9

*Salazar v. AT&T Mobility LLC*,
   64 F.4th 1311 (Fed. Cir. 2023) ..................................................................... 9, 10

*Vascular Sols. LLC v. Medtronic, Inc.*,
   117 F.4th 1361 (Fed. Cir. 2024) ...................................................................... 10

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996) ........................................................................ 6

*Wi-Lan, Inc. v. Apple, Inc.*,
   811 F.3d 455 (Fed. Cir. 2016) ...................................................................... 3, 4

\* All emphasis in quoted material has been added unless otherwise noted.

I.   **ARGUMENT**

A.   **"traffic shaping" (Patent 8,666,364 claims 7, 11, 14, 16, 19, 20, 27)**

1.   *O2 Micro* **does not preclude "plain and ordinary meaning"**

*O2 Micro* is not a blanket ban on "plain and ordinary meaning" whenever one party disputes a claim term. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008). Instead, that case ruled that "the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning." *Id.* at 1361.

Here, there is no dispute as to what "traffic" and what "shaping" refer to, both individually and collectively. Neither word inherently means "pre-existing." The only dispute is whether to narrow the claim to be limited to "pre-existing" traffic (flow or throughput of data). *O2 Micro* does apply just because one party proposes a narrowing construction.

2.   **Google's "pre-existing" construction does not reflect its argument**

Google's Reply argues that "even if traffic shaping occurs at some future point in time, there still must be a pre-existing flow or throughput of data at the time the traffic shaping takes place." Dkt. 71 at 2. Headwater agrees that traffic must eventually exist *in the future if and when the traffic is shaped*, but Google's proposed construction *does not reflect this*.

Google's proposed construction does not specify any reference event before which the traffic must be "pre-existing." For example, without a reference event, Google may improperly argue to the jury that such traffic must exist before the memory stores "a first service policy … for at least assisting in reducing data usage" in claim 1 of the '364 Patent. The "pre-existing" phrase is unworkably vague without including the proper reference event.

3.   **Google improperly attempts to narrow claim 7 using claim 11**

Under claim differentiation, claim 11 of the '364 patent informs the construction of claim 7. *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed. Cir. 2006)

(presuming "that each claim in a patent has a different scope"). Between claims 7 and claim 11, only claim 11 recites "identify[ing] a data flow," which must exist at the time of identification. More specifically, claim 11 first recites "identify[ing] a data flow" and then recites "apply[ing] an access control or traffic shaping to the data flow" that has already been identified.

That is no basis for adding a "pre-existing" limitation to every instance of "traffic shaping." In contrast to claim 11, claims 1 and 7 *do not have identifying a data flow* as an element of the claim, so the implications of claim 11 should not be added to claims 1 and 7. In claims 1 and 7, no data flow is claimed to exist or be identified at any specific time. Instead, claim 1 recites, "memory configured to store a first service policy … for at least assisting in reducing data usage," and "one or more agents configured to … apply the first service policy." Claim 7 further specifies that "assisting in reducing data usage … comprises causing an application level traffic shaping." As written, claim 7 is infringed when (among all other limitations), the memory is configured to store the first service policy (for assisting in reducing data usage by causing application level traffic shaping) and the one or more agents are configured to apply the policy. Google is wrong to suggest that "reducing data usage" is an active, present step of claim 7.  Reducing data usage may occur later by shaping future data. No data or traffic needs to be shaped or pre-exist yet.

### 4.    The specification further supports Headwater

Google's interpretations of the specification are just wrong. For example, Google argues that 374 Case, Dkt. 28-1 (Patent 8,666,364) at 48:43–56 is limited to "pre-existing" data flows. It is not. This passage gives an explicit example of traffic shaping to "reduce traffic speed for ***all*** applications and traffic types ***successively until*** the service usage projections are within service usage limits." *Id.* (emphasis added). The word "all" can include both present and future. The phrase "successively until" can include future traffic *until* limits are met in the future. Limiting claim 7 to exclude all future traffic would be inconsistent with this example.

As to the 96:17–40 excerpt, Google appears to concede the specification supports that "a user can pre-select which application will be subject to throttling, or traffic shaping, in the future." Dkt. 71 at 2. With this concession, there is no basis to *limit* claim 7 to *only* pre-existing traffic.

**B.    "A wireless end-user device" (Patent 9,143,976 claim 1)**

**1.    The unopposed combination of "Limiting preamble" and the general antecedent basis instruction solves everything**

Google is supposedly concerned that Headwater is accusing disparate components across different smartphones and routers. Headwater is not. Regardless, the general antecedent basis instruction in combination with the "limiting preamble" instruction resolves these concerns. *Wi-Lan, Inc. v. Apple, Inc.*, 811 F.3d 455, 462 (Fed. Cir. 2016) ("Subsequent use of the definite articles 'the' or 'said' in a claim refers back to the same term recited earlier in the claim"). The general antecedent basis instruction precludes (unasserted) infringement theories that combine elements from disparate end-user devices, for example, a display on one end-user device and other elements from a different end-user device or a network element. The undisputed "limiting preamble" instruction means that "wireless end-user device" is given limiting weight, such that the claim is plainly focused on an end-user device, not network-side infrastructure.

And contrary to Google's suggestions, Headwater is not asserting that a router or a network constitutes the claimed wireless end-user device—its contentions merely describe how they *operate within* networks and *communicate with* routers. Dkt. 66 at 5 ("To be clear, Google Pixel phones, tablets, and watches are accused of infringement as 'wireless end-user device[s] ….'").

**2.    The Federal Circuit's antecedent basis instruction is better than Google's new, ambiguous language**

To address Google's concern, the Court should use Headwater's general antecedent basis instruction taken directly from Federal Circuit authority. *Wi-Lan*, 811 F.3d at 462 ("Subsequent use of the definite articles 'the' or 'said' in a claim refers back to the same term recited earlier in

3

the claim"). In contrast, Google's new, ambiguous language about including "the elements recited in the body of the claim" can confuse the jury. Patent attorneys know that the claim's recitation of "at least one WWAN" (as opposed to "WWAN modem") is not an "element" of the claimed "wireless end-user device" merely because "WWAN" is recited in the body. But Google's new proposed instruction about "each of the elements recited in the body of the claim" does not explain to a lay juror what the "element" is or otherwise clarify that "at least one WWAN" is not itself an element that must be included within the wireless end-user device, as Google's proposal implies. Google's ambiguous construction invites lay jurors to misunderstand the instruction and claim language in a way that both Google and Headwater agree would be erroneous. Contrary to Google's argument, that is a "clear defect in Google's proposed construction." *See* Dkt. 71 at 4.

### C.    "[the] one or more processors [configured to]" (Patent 9,277,445 claims 1, 2, 6–12, 14, 16, 17, 19, 22, 25)

#### 1.    The Court should use the undisputed general instruction

Google's Reply has no opposition to the general instruction for antecedent basis, namely that "[s]ubsequent use of the definite articles 'the' or 'said' in a claim refers back to the same term recited earlier in the claim." *Wi-Lan, Inc.*, 811 F.3d at 462. Google admits this "is a non-controversial rule of claim construction." Dkt. 71 at 8.

#### 2.    Google's arguments are misframed and waived.

The rest of Google's arguments should be rejected as waived and misframed. Google's proposed construction does not capture whether "at least" one processor must perform all the steps or whether "each" of the one or more processors must perform the steps. All Google's proposal would say to the jury is that the terms "have the same meaning in each instance that they appear." A juror would understand this to mean that "processors" always means "processors" (e.g., "processor" does not change to "memory"), and "one or more" always means "1+." This has

4

nothing to do with distributed processing or the arguments briefed below.

Google's tangential construction hides the extent that Google seeks to rewrite the claims. Google wants to require "at least one processor that performs each limitation" (thus rendering the "or more" part superfluous). Dkt. 71 at 6. As a backup, Google argues that "the one or more processors" "must *each* be involved in performing *each* of the later limitations that recite "one or more processors."' *Id*. at 7 (emphasis added). Google's proposed language captures none of these added conditions. Moreover, Google's new "each of" argument was first raised in Reply (and is thus waived), and this language notably does not come from Google's cited caselaw.

### 3.      Headwater's proposal adds no new claim language

In contrast, Headwater is not asking the Court to insert "any one of" before "one or more processors," as Google's Reply argues. Dkt. 71 at 6. Headwater applies the plain and ordinary meaning of "or"—a conjunction that inherently allows the choice of either option joined by "or."

For example, a device may have three processors. This clearly meets the numerical limitation "one or more processors" because three is "more" than one. Even if only two processors are used to perform claim 1 and a third processor is configured to perform functionality of a dependent claim, they always make up the same set of "one or more processors" that collectively perform the claimed functionality using distributed processing. Antecedent basis is respected because each instance of "one or more processors" always refers to this same set of processors— which is why the application of antecedent basis, as a general principle, is not disputed. This is the only construction consistent with the numerous examples of distributed processing described throughout the '445 Patent. Google's alternative should be rejected as waived and on the merits.

### 4.      Only Headwater's proposal is consistent with the specification

Headwater's proposal of plain and ordinary meaning, in addition to the general rule for antecedent basis, is consistent with the law. The phrase "one or more processors" means that one

processor can perform all of the steps itself, or that more than one processor can collectively perform the steps. No new language is being added; the plain meanings of "one" and "or more" allow for one processor or multiple processors. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312–13 (Fed. Cir. 2005) ("words of a claim 'are generally given their ordinary and customary meaning'"). When antecedent basis is correctly applied, the "same one or more processors" can perform any claimed function as a distributed processing system.

Headwater's proposal is the only construction that is consistent with the specification, including its lexicography and examples. *Id.* at 1315 (claims "must be read in view of the specification, of which they are a part"), 1316 ("In such cases, the inventor's lexicography governs"); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (a construction that excludes the preferred embodiment is "rarely, if ever, correct").

The '445 Patent defines "processor" as "one or more devices, circuits and/or processing cores configured to process data." 372 Case, Dkt. 24-1 (Patent 9,277,445) at 3:11–14. That definition contains no restriction requiring a single device or core to execute every program step. The '445 Patent describes how "more or less of the service processor functionality is moved onto the modem subsystem or onto the device application processor subsystem," and that "the service processor can be distributed." *Id.* at 61:27–41. The patent further describes distributed "engines"— such as the Network Service Usage Classification Engine and Differential Network Access Control Engine (*id.* at 100:28–102:15, Fig. 27)—where each engine "includes a dedicated or shared processor" whose "functionality [can be] distributed." *Id.* at 95:31–35. The '451 Patent, which is incorporated by reference, further states: "a device includes more than one processor and/or sub-processor, and in such a device, *there can be a division of the functionality for one or more processors and/or sub-processors*." Dkt. 66-3 (Pat. 8,799,451) at 27:6–10.

6

Google's Reply does not reconcile its distributed-processing concession with its single-capable-processor argument. Google "does not dispute" that the claimed functionality "[is] or may be distributed over multiple processors or devices." Dkt. 61 at 9. Yet Google simultaneously insists that "there must be at least one such processor that is capable of performing all those limitations." *Id.* at 6. These positions are facially contradictory; Google is trying to exclude distributed processing after conceding that the claims encompass it.

Google argues that its proposal is "consistent" with one narrow example from the specification. Dkt. 71 at 10. But mere consistency with just one example in the specification is not a reason to limit the claims. *Phillips*, 415 F.3d at 1323 ("although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments"). The '445 Patent more broadly permits that "more or less of the service processor functionality is moved" and "the service processor can be distributed." 372 Case, Dkt. 24-1 (Patent 9,277,445) at 61:27–41. Google's proposal to limit all functionality to one processor contradicts with this broader disclosure. Headwater is entitled to claim both possibilities.

### 5.    Google continues to ignore "or more"

Google's Reply has no justification for ignoring the "or more" part of the claims. To require one processor to perform all functionality ignores the explicit recitation that functionality may be performed by "more" than one processor. *Intel Corp. v. Qualcomm Inc.*, 21 F.4th 801, 810 (Fed. Cir. 2021) ("It is highly disfavored to construe terms in a way that renders them void, meaningless, or superfluous."). The "one or more" language chosen by the patentee captures the flexibility of distributed processing, and Google ignores this. If the patentee intended a single processor to perform every function, it would have claimed "a processor"—not "one or more processors."

### 6.    Google's suggested alternative claim language has a different meaning

Google's suggestion that Headwater should have drafted subsequent limitations to refer to

7

"other" processors misses the point. Dkt. 71 at 9–10. "Other" has a different, exclusionary meaning that does not permit referring back to the same set of prior processors. Google's position is that Headwater should have claimed one processor that performs step X and a second processor that performs step Y, but that would not have captured the intended flexibility of distributed processing. The actual claimed inventions cover either processor performing either or both steps, so Google's suggestion that Headwater should have used "other" in the claims completely misses the point.

### 7.      Google is driven by futile non-infringement motivations

Google's Reply reveals that Google's arguments stem from its non-infringement concerns, not from principles of claim construction. Google's Reply worries that under the default plain and ordinary meaning, the "plaintiff is free to pick and choose disparate processors to satisfy any subsequent limitations, even if the processors are uninvolved in performing the other limitations." Dkt. 71 at 7. But such distributed computing is what Headwater claimed, and there is nothing inherently wrong with this. Headwater had every right to claim a distributed system that covers both the possibility of one processor doing everything, as well as multiple processors performing distributed processing, because this is described in the patent. And when Samsung filed its IPR petition, Samsung enjoyed that breadth when making invalidity arguments, and Samsung notably did not argue the construction that it advances now. *See* Ex. 4.

Notably, the patent's lexicography also forecloses Google's argument. The '445 Patent defines "processor" as "one or more devices, circuits, and/or processing cores," such that even arguing that Headwater needs to identify at least one processor would still allow Headwater to pick and choose one or more devices, circuits, and/or processing cores. The relevant specification disclosures consistently promote flexibility, and Google's proposal ignores this.

### 8.      Google's backup proposal is nonsense and contradicts the patent

Google's new proposal that "the one or more processors" requires that each of the one or

more processors "must each be involved in performing each of the later limitations" is not only waived because it was first presented in Reply, but also it is inconsistent with the specification and nonsensical. For example, assume that two processors constitute the "one or more processors" of claim 1 of the '445 Patent. Dependent claims 2, 6–7, 10–12, 17, 19–20, and 22 each further recite one additional function of the one or more processors. There is no reason to require that both prior processors be involved in performing one additional dependent-claim function.

### 9.    Google's Reply continues to blindly apply caselaw

By doubling down on *Finjan LLC v. SonicWall, Inc.*, 84 F.4th 963 (Fed. Cir. 2023), *Salazar v. AT&T Mobility LLC*, 64 F.4th 1311 (Fed. Cir. 2023), and *Carrum Techs., LLC v. Ford Motor Co.*, Nos. 2024-1183, 2024-1480, 2025 WL 2924504 (Fed. Cir. Oct. 15, 2025), Google continues to urge this Court to ignore the fundamental *Phillips* rule that claims "must be read in view of the specification, of which they are a part." *Phillips*, 415 F.3d at 1315. As Headwater explained, Google's cited cases did not involve patents with comparable definitions or embodiments in their specifications. Dkt. 66 at 13–14. Google's Reply does not explain, for example, how the intrinsic records in those cases compare to the '445 Patent's lexicographic definition of "processor" as "one or more devices," its description of distributable service-processor functionality, or the incorporated '451 Patent's statement that devices may have a division of functionality across multiple processors. Dkt. 71 at 11–12. The Court should not blindly apply the outcomes of cases when the underlying specifications are different, even if they construe similar words.

This case is more like *BTL Indus. Inc. v. Rejuva Fresh LLC*, No. 1:23-CV-00032-SDN, 2025 WL 2452505, at *11–12 (D. Me. Aug. 26, 2025), where the court declined to follow *Salazar* because "[u]nlike in *Salazar*, however, the operational relationship between 'the electrode' and other structural elements does not logically require at least one electrode to be capable of delivering both energies." Here, Headwater's specification repeatedly made clear that there is no structural

9

requirement for a single processor to perform all claimed functionality.

### 10.    Google Misinterprets Baldwin

Google's Reply misinterprets *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338 (Fed. Cir. 2008), to argue that "'a' or 'an' in patent parlance carries the meaning of 'one or more.'" Dkt. 71 at 6 n.2. Google's incomplete quote omits critical qualification: "in open-ended claims containing the transitional phrase 'comprising.'" *See id.*; *Baldwin*, 512 F.3d at 1342. The open-ended word "comprising" allows more/other components to be claimed in a system. Thus, "a" is not always synonymous with "one or more." *See Salazar*, 64 F.4th at 1316–17 (providing examples and noting that "*Baldwin* … does not set a hard and fast rule that 'a' always means one or more than one"); *BTL Indus. Inc.*, 2025 WL 2452505, at *11–12 (distinguishing *Salazar* because "said microprocessor" in *Salazar* necessarily referred back to the same processor based on structural elements). Here, the claims do not recite any particular structure necessarily tying the claimed functionality to any one processor. Instead, they recite "one or more processors" directly—not "a processor"—so any argument that "a" means "one or more" misses the point. The patent permits plurals and includes examples and definitions capturing distributed processing, refuting Google.

### 11.    Google cannot reconcile the parallel terms

Google does not seek construction of seven other "the one or more [X]"—including "the one or more processors" as used in the '976 and '359 Patents—because applying Google's reading of "one or more" to those terms would create problems that Google cannot explain. Dkt. 66 at 11. Although the "[X]" part is different, the "one or more" claim terms should be "construed consistently with [their] appearance in other places in the same claim or in other claims of the same patent." *Vascular Sols. LLC v. Medtronic, Inc.*, 117 F.4th 1361, 1370 (Fed. Cir. 2024). Google's selective construction of only the '445 Patent's "one or more processors" confirms that the restriction it seeks is litigation-driven, not grounded in the ordinary meaning of the claim language.

Dated: June 18, 2026

Respectfully submitted,

*/s/ Marc Fenster*

Marc Fenster
CA State Bar No. 181067
Email: mfenster@raklaw.com
Reza Mirzaie
CA State Bar No. 246953
Email: rmirzaie@raklaw.com
Brian Ledahl
CA State Bar No. 186579
Email: bledahl@raklaw.com
Dale Chang
CA State Bar No. 248657
Email: dchang@raklaw.com
Kristopher Davis
CA State Bar No. 329627
Email: kdavis@raklaw.com
James S. Tsuei
CA State Bar No. 285530
Email: jtsuei@raklaw.com
James N. Pickens
CA State Bar No. 307474
Email: jpickens@raklaw.com
Jason M. Wietholter
CA State Bar No. 337139
Email: jwietholter@raklaw.com
**RUSS AUGUST & KABAT**
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474

Qi (Peter) Tong
TX State Bar No. 24119042
Email: ptong@raklaw.com
**RUSS AUGUST & KABAT**
8080 N. Central Expy., Suite 1503
Dallas, TX 75206
Telephone: 310-826-7474

11

**ATTORNEYS FOR PLAINTIFF,**
**Headwater Research LLC**

12

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served on June 18, 2026, with a copy of this document via the Court's CM/ECF.

*/s/ Marc Fenster*
Marc Fenster